v. Clarissa Rhode, etc. et al. Are you ready to proceed? Are you ready? Proceed. May it please the court, counsel, Mr. Grand. My name is Mike Reagan, and I represent Randall Moon, executor of the estate of Catherine Moon Deceased, who is also counsel for the estate and is seated at table today. The first issue is to whether the full extent of the discovery rule is legally available to a plaintiff in the Wrongful Death and Survival Act cases. The appellate majority held that it is not available. The majority held instead that once the plaintiff has knowledge of the death alone, that the statute of limitations begins to run without regard to whether the plaintiff also has reason to know that the injury may have been caused by a wrongful act. The majority held that because of the historic origins of Wrongful Death and Survival Act cases, the Limitations Act must be read to provide that the statute of limitations begins to run upon the acquisition only of the knowledge of death without any regard to the decades of this court's opinions and the appellate court's opinions concerning the statute of limitations in the contrary manner. Justice Lytton dissented at length and in detail, supporting the conclusion that Section 13-212A of the Limitation Act applies fully to wrongful death and survival actions just as it does to any other action for medical malpractice. The defendants never argued the primary ground upon which the majority ruled, either in the circuit or the appellate courts. Rather, defendants argued that under all the facts, as of the moment of death, plaintiff had sufficient knowledge that the statute began to run so that there was no factual reason to apply the discovery rule or that if the discovery rule were to be applied, that the limitations period began to run more than two years after some unspecified date. And in fact, the defendants set out properly the operation of the discovery rule in their documents. Now, we don't fault the defendants for not making that argument. Thirty-seven years of appellate authority in favor of the operation of the rule in these cases and strong dicta from this court to the same effect would give any lawyer strong reason to pause before ever making that argument. The first time that it was known in this case that the discovery rule would not be applied was upon the issuance of the appellate opinion. Plaintiff filed a petition for re-hearing, which was denied. The court said that plaintiff had a duty to have written about the legal availability of the discovery rule and that it knew that it was creating, the court knew, that it was creating a split in authority and said that it expected to hear from this court at some point in time. There is one clear starting point for the analysis of this issue and that's section 13-212A, which is the Limitations Act. It states that causes of action for injury or death cannot be brought more than two years, quote, after the date on which the claimant knew or through the use of reasonable diligence should have known of the existence of the injury or death for which damages are sought. Like Rome, all of the analytical roads lead to that statute. More to the point, any analytical road must start from that statute. The Wrongful Death Act itself contains a limitations provision, but the case law establishes that it is the med-mal, the medical malpractice section of the Limitations Act, the more specific act which controls here. Durham v. Michael Reese, Young v. McKee plainly say that. This court has the benefit of not needing to start with a barren slate. There is a great deal of rich precedent, which has already been brought to bear on the relevant wording of the statute. The words stating the applicability of the act and the knowledge required refer to, quote, the injury or death. This court has already interpreted the meaning of the word injury in that exact phrase to mean that it includes knowledge of wrongful causation, which is what was stated in Witherall v. Weimer by this court in 1981. Thus, in a case for injury- What do we do then with the wording in the Wrongful Death Act that appears to be unambiguous, quoted here, every such action shall be commenced within two years after the death of such person, period. So the- and I realize we're dealing with the Supreme Court here and we're not controlled by an appellate court precedent. However, there is, as I referred to, rich precedent, saying that it is the Limitations Act which applies, and I believe that the rationale of the two cases I just mentioned, Durham and Young, are to the effect that the Limitations Act, which says that it applies to medical malpractice cases, is the more specific act, and therefore it controls over the Wrongful Death Act. And secondly, it is the later past act, and therefore under a separate canon of statutory interpretation, it would also- If that was the case, Mr. Reagan, there are, in fact, the defendant states there was recent legislation concerning the Wrongful Death Act introduced to the Illinois House. You're aware of that legislation, right? Right. And it would have provided that an action for damages under the act, again, a quote, shall be commenced within two years after the discovery of evidence indicating that a wrongful death may have occurred, which the language would seem to indicate your position, that if that legislation had passed, certainly the discovery rule would apply. But why would the legislature have considered such language if the discovery rule already applied to a wrongful death action? The most efficient answer I can give you is, first of all, I can't guess as to what the legislature might be thinking at some point in the future, but it hasn't passed. And, you know, the law is that, you know, I don't mean to detract from the quality of your question at all, but I can't speculate as to what they were thinking at that time beyond that. Mr. Reagan, the gap in time between March 2010 when plaintiffs received the medical records and April 2011 when he contacted the medical consulting firm to review the records, is that significant in determining when the statute of limitations or the limitations applies? That would get to the second issue, which I intend to talk about, but I'll address your question right now, which is that, yes, it's a factual circumstance. But this court has said recently in Logan Square and many times before that in many, if not most cases, that this is going to be a question of fact on a reasonable basis as to when the person is put on notice, the plaintiff is put on notice, reasonable notice, as to, you know, when they should have knowledge that there might have been wrongful causation and that mere suspicion is not enough. So the mere fact of gathering records with respect does not address that question of permitting a trier of fact to determine whether there was reasonable grounds to think that there might have been false. So, yes, it's relevant, but it is a fact. There are many facts, and that should have been left for the trier of fact. Did the trial court make that determination, counsel, or did they strictly decide it under 13212? The trial court did address that. So the trial court did two things. The trial court accepted the defendant's primary argument, and I can say with great certainty from the record that the trial court's primary argument or primary conclusion was that as of the moment of death that Mr. Moon had sufficient knowledge to think that there might have been wrongful causation, he was put on notice, and therefore he had two years from the moment of death, not because the discovery rule was not applicable, but rather because the court said, I think he had enough information. So at the moment of death, what information did he have? And, excuse me, they focus on one question and one answer from Mr. Moon's deposition, in which he was asked, Mr. Moon said, look, at some point in time you're going to have to tell the jury how the death of your mother affected you. And he said that she was doing pretty well, I thought, and I wish that she had gotten better treatment, period. End of question, end of answer, and no more questions. So he was asked, how did the mother's death affect you? And he said that. But the defendants tell you in their brief here that that's reasonable belief that there was negligence, and that's not so at all. And so we've cited the Young case, which says that a mere suspicion is insufficient without also looking at what the underlying reasons for the suspicion were, and that's never been done here. So back to your question, the trial judge, his focus was, look, two years from the time of death, and then he said in a paragraph, and I don't fault him for that, but he said that even if we were trying to fix a date past that time, that the time would have long expired, and he did not say what the precipitating event would have been, he did not say what that time would have been, he just says it's too long. And that is largely what the appellate court did as well with that issue. And I'll just jump to that right now if I could. So the appellate court, the big focus of this opinion was the question that you can't rely upon the discovery rule. And then in a single paragraph, the court said, but even if we were to apply the discovery rule, that the time had elapsed. And the court didn't, the majority did not specify a time. The discovery rule talks about when does the statute of limitations begin to run. That's the point that you discover. And the majority opinion never says when that is. Justice Lytton, at great length, took up this question that you just asked me about and said that the time began to run when the plaintiff received reports directed to some other physicians, the surgeon's errors, plain errors. And that put the plaintiff on notice that there might be some wrongful causation and therefore he was bound to look into wrongful causation against everybody and that's when his time began to run. So Justice Lytton took a very middle-of-the-road position, didn't say we're not going to start the statute until you know about Dr. Rohde, the defendant in this case. We're going to start it when you had knowledge of any potential wrongdoing in the form of an expert. He didn't say only an expert, but he does cite cases accurately, which we've reproduced in the brief, saying that that's one circumstance that the trier of fact can determine. That when you get an expert's report, you can look to that. It's not the only determinant, but it's one. And then so when that report was received, within two years he filed. Justice Thomas, it looks like you're ready to ask me something. I am. You've been around a while. In response to that question, it seems to me that a plaintiff's delay in seeking medical consultation can, in a practical effect, toll the statute of limitations, right? I mean, how long can they wait before seeking some type of consultation to indicate that there was a wrong committed? There is no bright line for that. The answer is to be found. So one day a relative wakes up and says, you know, I think something may have gone wrong, and it's four years later. So they've told the statute for four years, and now they get a consultation that indicates that malpractice may have been committed. So they get four years, and they get another two years. Like so much of the law, it is a question of fact to be determined on an objective, reasonable basis, by the trier effect. I mean, our entire system is based upon somebody other than the court deciding facts, in most circumstances, unless the facts are so absolutely abundantly clear. What about the facts of this case? I don't think that's the case, because Mr. Moon was focused on the case as to the surgeons, okay? Dr. Rohde was a radiologist, and he was working on the case as to the surgeons and acquired knowledge that there may have been some wrongful conduct. How long was that after the death? So the death was May 29th of 2009, and he requested records in February of 2010, and he contacted the medical consultation firm in April of 2011. So from May 29th, date of death, to April 11th, 2011. And what was the date that they came up with as the operative date of discovery? Nobody has. So that's one of my points. The trial court never fixed a date. The appellate court never fixed a date. Justice Lytton fixed May. He said first. There's a question in the records as to whether it's first or second, but May of 2011. So Justice Lytton says that by May of 2011, Mr. Moon had reason to think that there might be possible wrongful causation with respect to the surgeons. And that's when the statute began running, and that he was then charged with looking into anything else, and he complied with that statute. Is that when review was sought of Catherine's CT scans? Pardon me? Is that when review was sought of Catherine's CT scans? Shortly prior to that time, yes. I don't know exactly when that inquiry was made, but shortly prior to that time. So I know these are factual questions, but there was a wait of a year after receiving Catherine's medical, right? When they received Catherine's medical records, that took a year, and then three years after that there was a review of the CT scans. Not three years. So the request for the records was February of 2010, and three years, yes. You are correct. Okay. By the time there was a return of the review, it was three years, yes. I agree. Are you asking the court, in light of this case, to make some type of bright-line rule as to how long they have to pursue? Because apparently that does toll the statute, right? Yes. I am asking this court to recognize that this case was dismissed on a Section 2-619 motion, and to note that neither the appellate nor the circuit courts fixed a time. I mean, there wasn't this inquiry probing as to what that time should be. It just said it was too long, period. The standard review is de novo. All well-pleaded facts must be taken as true. All reasonable inferences must be drawn in our favor, and all documents must be interpreted in favor of the plaintiff, the non-movement. And so this is not appropriate disposition under a 2-619. Mr. Bragan, may I go back to the first question? There's the fact question we've been discussing, but there's also the legal question and the meaning of the statute 13212. And this is the language of the statute that determines when the case must be brought. And basically the language is pretty clear, that there's a two-year period from the date of which the claimant knew or through the use of reasonable diligence should have known of the injury or death. And as you've indicated, this court has looked at, in the Weatherall case, has looked at the word injury and determined that that meaning of that word includes an idea of not only an event taking place but that it was wrongfully caused. And it seems to me the question here is, we have another word that has not been addressed by this court in this statute that I just read, which is death. And so you're asking us to read into that, not only the event of death, but that it was wrongfully caused. So my question is this. There seems to be a great deal of discussion from your opponent that we need to look at the larger idea of what is the nature of this case. This case is brought, obviously the woman died. She's not bringing the case about her injury. Rather, this is under a statute, the wrongful death statute. And we understand that when there are statutes written by the legislature that we're going to be looking at them very narrowly, strictly, and to the language that they use. So you're really asking this court to read into the statute I just read some language that's not there. How do we do that? I think you have hit on the absolute precise issue in this case. Thank you very much, Mr. Rickenbacker. And I was avoiding saying it was a good question because that's too easy to say. But that's the question. That's the precision of this question. Apparently mine were chopped liver. The phrase is injury or death. Witherell v. Weimer reads into injury what you've just talked about. Exactly. And we've documented that in spades. We've documented how the appellate court has recognized that this court in Witherell v. Weimer read into injury the requirement of knowledge. Now, what we have also done at great length in our brief is to show how the discovery rule, there's one exception to this, but anyway, the discovery rule is largely a matter of, it is statutory interpretation. And it starts off within Rosney v. Marnell interpreting the word accrues to include the concept of causation. And so the court did the same thing with respect to injury in Witherell. And it is, I think there is an absolute bright shining light illustrating the path that death should be interpreted in the same way. But if you ask us to do this, and we look at not only the statute we're interpreting, but other statutes using the same language, what about the Wrongful Death Act then? And you've alluded to the fact, I believe, that you said 13-212 is the more specific. Why wouldn't wrongful death, which is what we're dealing with here, be the more specific? Because of the, first of all, we were criticized by the defendants for saying that it's the Limitations Act. And they said, of course it is, that it's only the Limitations Act. But your premise has been addressed by the case law, but not by your honors, to the effect that the more specific act, the later act, the Limitations Act, is what controls. And so my time, anyway, that's my answer to your question. Thank you. My time is up. It is expired, counsel. Thank you. Okay, thank you. Good morning, your honors. May it please the court, Karen DeGrand on behalf of the defendants, Dr. Road and her group. Your honors, our position is simple, and it is that the legislature provided 730 days for an estate administrator to investigate and file a medical malpractice action for a wrongful death claim. And on the undisputed facts of this case, that was ample time. Looking at the language of Section 13-212, the legislative intent we submit should be discerned from the plain language. And there hasn't been an argument offered by the plaintiff in this case that there is an ambiguity. There is simply an argument that the case law that has interpreted the word injury necessarily should control the language that's in the statute that pertains to death. And it is different, and this court's precedent establishes that it's different. Under the Wrongful Death Act, which we believe, as counsel says, 13-212 controls, the Wrongful Death Act obviously is also relevant because it's the basis for the cause of action. In the first instance, there wouldn't be a cause of action under the medical malpractice case unless the Wrongful Death Act and derogation of the common law provided that cause of action. But it's our position that these two statutes can be read harmoniously, which makes sense and furthers the statutory construction that the court would undertake. It's interesting to hear and to read in the plaintiff's brief the references to the concept of accrual of a cause of action, but the Wrongful Death Act, the statute or the time limit that's provided in the Wrongful Death Act doesn't refer to accrual of a cause of action. The very plain language is simply that every such action shall be commenced within two years of the death, period. And I think that Justice Thomas raises an excellent point, which is what we had raised in our brief. What do you think about Justice Tyson? Both questions were excellent, Your Honor. But save. Now I've lost my place. My excellent question. The excellent question, thank you, Your Honor, about Mollie's law, which is the legislature actually, as we speak, because the legislature, the Senate now is addressing the revised version of Mollie's law. It already had passed the House. So the Senate is addressing that legislation this very month. And it certainly gives some information that I think that is relevant, which is, number one, that there's no discovery rule that's in the current version of the Wrongful Death Act, other than in a very limited situation that doesn't apply here, and that the legislature knows how to amend that act and how to use that language when it wishes to do so. Mr. Grant, is there any mechanism that would toll the running of the statute when there was an indication some point after the death, you know, post-two years after the death, where they would find out that the death was wrongfully caused? Any mechanism at all, or is it just foreclosed, period, out? Your Honor, there is. Under Section 13212, and I think this somewhat gets the heart of the overall scheme, which makes sense, in my opinion. But under Section 13-212, even under the application of the discovery rule, the limited discovery rule that's written into it as now, there still would be the opportunity for a post-two years of discovery, the death, action to be brought in the event of fraudulent concealment, and there also would be an opportunity to bring such an action in the event of equitable estoppel. And that's exactly what happened in Witherell. Witherell is discussed by the plaintiff at great length and was discussed in the plaintiff's presentation this morning at length, and we also have discussed that case. But in Witherell, it was the action, and it was a medical malpractice injury action, not a medical malpractice wrongful death action. The action against the physicians in that case was revived not because of the discovery rule, but because of equitable estoppel, but because the plaintiff had been given information that deterred her from discovering the cause of action. And I believe this court's decision in MEGA specifically recognizes that possibility of both equitable estoppel or the fraudulent concealment statute. And that also was recognized by the first district when it released its decision in Greenock that fraudulent concealment would be a possible exception or a potential exception. We know from the language of the statute that it's a potential exception, and that was the analysis of the first district in Greenock, which we submit hits the nail on the head based on the plain language of the statute that was the precursor to the current 13212. Can I just wither off for one minute? Certainly. The court does state there that this idea of injury, the statute starts to run when a person knows or reasonably should have known of his injury, which is the language directly from the statute. And then the court goes on to say, and also knows or reasonably should have known that it was wrongfully caused. And the court does add in this idea of a discovery rule into the plain language of the statute that says injury. I mean, the idea, of course, is that the argument is that someone could have an event occur and not being a doctor, not understanding that it was wrongfully caused. It might take some time. You have a pain and you don't really know why you have a pain. Eventually you go to the doctor and find out something had occurred. So deferring to the expertise of the physician and not the person who's injured. So there's no doubt that the court reads in this language the statute as to injury, correct? It does, Your Honor. So why shouldn't the same analysis that's being used in the case that was many, many, many years ago, why shouldn't we use the same analysis and interpret the death language in the statute in the same way consistently as this court has held whether a case was decided back in 1981? Your Honor, there's a few reasons. One is that we're addressing a wrongful death action. And in the instance of a wrongful death action, which is in derogation of the common law, it's incumbent on the court to strictly construe the statute and to follow the wording in the statute. But as a more overarching response to your question, in rereading all of the cases that the parties have cited in the briefs that were submitted to the court, and including the Witherall case, there is a theme and a recognition that the more obvious the injury, the easier it is to determine wrongful cause. And I think that's an interesting component of all this. And I think also thinking about the cases in which the discovery rule comes into play in a medical malpractice action. I mean, just generally speaking, the kinds of cases that are involved are delayed manifestation of injury. That was in the Lipsey case. It's in a known injury but a misdiagnosis. That was the Witherall case. Failure to diagnose. These are the sort of typical malpractice situations in which the discovery rule comes into play. But in the instance of a death, there's no delayed manifestation.  And the injury is obvious. And that, to me, gives some rhyme or reason to distinguishing between injury and death, in addition to the plain language of the statute. And that, in my view, is a fairly clear indication from the case law. And this is a theme running through all the case laws. It's not just one mention in Witherall. It's in Clark. It's in Hoffman. It's in Berry. It's in Costello. It's in Cramsey. So on and so on. Many of the cases from the appellate court as well as from this court. And there certainly can't be a condition that's more obvious than death. And unless we have a situation where there's a fraudulent concealment, you have an exception there, or there's an equitable estoppel issue, another potential exception, two years is going to be ample time, the legislature has told us. And the other issue that should be part of the backdrop of all this is the protection that the legislature has determined should be given to medical malpractice defendants. And this is something that's been recognized in the decisions of this court, starting perhaps before, but certainly Anderson, certainly Mega, certainly the Eldridge case. And this court has recognized that that has been what the legislature is telling the court when it enacts 13212. And that needs to be part of this analysis. Because, after all, when looking at, and again trying to harmoniously look at these statutes, 13212 and the Wrongful Death Act, are we saying that there is going to be less protection for doctors under 13212 than there's going to be under the Wrongful Death Act, which clearly says no actions can be brought more than two years after the death. I don't think that possibly could have been the intention of the legislature. Again, Lipsey is another case that squares with that analysis of the injury, Your Honor, being whether the concern of the court in Lipsey was whether the plaintiff even had an opportunity to discover the cause of action. And in that case, because of the misdiagnosis, basically, the plaintiff didn't even know she had an injury until more than three years after the negligence. And in that case, the court came to the conclusion it did because not only the wrongful cause couldn't be discovered, but the injury itself couldn't be discovered. And that's a different situation than in the statute we have here. We have some subsequent and obviously opposing decisions. The Feuer case, the appellate court came to the opposite conclusion. They ended the appellate court in the Greenock case. And it seemed to me that it reached that conclusion by essentially turning away from the plain language of the statute. And in doing so, we submit the court did not properly interpret the statute. The second district followed the Feuer case with the Coleman decision in 1982, where the court acknowledged that the plain language had been exceeded by the court in Feuer. But, citing Ritherell, the court in Coleman followed Feuer notwithstanding that analysis. And then next was Arndt out of the first district in 1987, which came to the conclusion that the conflict between Greenock and Feuer was resolved when this court denied a petition for leave to appeal. And obviously, that denial did not resolve any conflict. Should we think about legislative acquiescence? In other words, this line of thinking has been out there for 30 years. And the legislature has not amended the statute at this point to, for example, make clear that they don't want a discovery rule. Should we take that into consideration if the legislature hasn't acted? I don't believe that's appropriate in this case, Your Honor, given the plain language of the statute, given the fact that this court has not had the opportunity until this case to construe the statute, and given the fact that the acquiescence would be to the conflicting body of case law, although it's lopsided, I'll certainly acknowledge that on one side, but we have Greenock and then we have this trio of cases, which it seems to me fairly apparently was disregarding the plain language of the statute, and then moving forward on the basis of a misapprehension that denial of a petition for leave to appeal indicates a resolution of that conflict. So I would say that in this instance, Your Honor, that aid for statutory construction probably should not be given much, if any, weight. I'll move on to the second issue, if I may, if the court has no further questions on the first issue. Mr. Grand, let me back up and ask you a question on the suit that's filed in 2013. This instant case, it's predicated on medical malpractice, correct? That's correct, Your Honor. And the pleadings that were filed that began the case included, I forget what the number is under the code, a medical report? Yes, 2622. Would there be any way to bring this case without a medical report? Your Honor, the case could be filed without a medical report and an extension sought under 2622, and that's another provision that the legislature has provided. And actually, I think the existence of that provision somewhat is illustrative of the error, in my opinion, by the dissent in articulating what sounds to me to be a bright-line rule in a medical malpractice action, that the action, that the discovery of the action occurs when a medical report is received. I mean, that should be one of many factors that's considered. And it seems to me that from paragraph 58 of the opinion where the dissenting justice observed that the statute of limitations begins to run when the plaintiff receives a report from a medical expert finding negligence against any medical professional who treated the decedent. That sounds to me like a bright-line rule, and I don't think that's appropriate, and I don't think it's an appropriate deciding factor in the facts of this case. What sets this case apart and what I think fully supports the decision of both the circuit court and the appellate court is that the plaintiff undisputedly gained knowledge of the situation from his multiple roles as the son of the decedent, who was well aware of his mother's condition and of the circumstances surrounding her hospitalization, as executor of the estate, appointed two weeks after the death, and as an Illinois licensed attorney with personal injury experience. The undisputed facts show that Ms. Moon was doing okay health-wise, although she was advanced in years. She then was hospitalized with abdominal problems, and per the plaintiff's deposition, the four adult children were involved in the post-op period in addressing the complications that appeared to get worse, and the record is the plaintiff's deposition testimony. By the way, it certainly wasn't just that one question and answer that was asserted in this court and in the lower courts to establish what we believe is, as a matter of law, a discovery of the cause of action. It was all of these circumstances, and all of the circumstances should govern that inquiry, and it seems to me that, as a matter of law, all of the circumstances point to the conclusion that there was knowledge of wrongful cause, and we did actually, in our brief, take a position on when that trigger was, and it was in February of 2010, when the medical records were requested at that time by the plaintiff. The problem that we have with the dissent's articulation is that it seems to be a bright-line rule, and it essentially establishes that discovery of the negligence, that is, discovery of the cause of action, is what triggers the statute of limitations, and that's contrary to this court's decisions in Knox and Nolan. It's not discovery of the cause of action. It's not knowing that there's negligence. It's knowledge of the injury and that it was wrongfully caused, and there is a distinction drawn between those two concepts in this court's well-established case law and the discovery rule, and it's our position that that distinction should be maintained. Thank you, Your Honors. Thank you. With all due respect to my great friend, Mr. Grant, that was a straw man. We are not – we've never said there was a bright line. We've never said that we – the statute does not begin running until there is knowledge, complete knowledge of negligence. Rather, it is a mix of all of the facts, and in Nolan, which we've set out in our brief, the question is suggestion, I mean a reasonable suggestion, reasonable possibility that there may have been wrongdoing, and there is nothing to support the proposition that merely getting medical records is evidence of that Nolan test that you have reason to believe that there was wrongdoing. Legislative acquiescence should be applied here. It is only one tool. We've talked about how the fact the court has referred to it as a weak read, but in referring to it as a weak read, it was applied. So it has application for whatever it might be worth. And in re-marriage of Mathis within the last year or two, the last few years, I can't remember the exact year, this court has applied legislative acquiescence even when the case law was not monolithic, noting that it was overwhelming, and that's what we have here. There is one case, Greenock, to the contrary. There are many cases in our favor, and so it applies. If, back to the, with all due apologies to Justice Thomas, back to Justice Tice's question about how this is to be interpreted, whether how death is to be interpreted relative to injury. If you do not read causation into death, as Witherell and so many other cases read causation into injury, then you will be started on an irretrievable path of undoing Witherell, because if it doesn't apply to death, then it doesn't apply to injury, and Witherell so long ago was wrong. You will have to undo Rosney v. Marzl, which is the first, essentially it was the first case for the discovery rule in Illinois, because the word there was accrues, and it too involved judicial interpretation of a statute. You will have to do the seven or so cases, undo the seven or so cases decided since 1978, starting with Fewer, which in great extent analyzed this and say that the causation should be read into it. And what will be put in jeopardy is all discovery rule cases, because the discovery rule in Illinois, although it was first introduced by statute involving the limited instance of foreign bodies left in after surgery, has been a case, a situation of statutory interpretation. Is there a danger, though, that we would be saying all wrongful death cases, it's two years, except medical malpractice cases? Well, that question as to the interpretation of the Wrongful Death Act, I suggest is for another day, which is a way of answering your question, in that what we have here today is a medical malpractice case. And so there's a famous book from the University of Chicago professor who titled One Case at a Time. And so that's the case that we have here today, which is the Medical Malpractice Act. And the court can take that up in a different case. So, yes, that tension would exist. But we have, in response to Justice Carmeier's question, I again say that Durham and Young say that it is the medical malpractice case and medical malpractice statute limitations which governs here. And again, the outset of the defendant's brief says that's what governs. And the majority opinion says that's what governs. And so there's a lot of unpacking that would have to be done to say, okay, we're going back to that. Now, on this question of strict interpretation, we cited the Supreme Court of the United States in Van Beck. And I pointed out in the brief how this court a long time ago relied on Van Beck. And there, Justice Cardozo, quoting Holmes, said that a subsequent statute in that case involving wrongful death was a new legislative impulse put into the system. And so we're not here, like Lord Ellenborough in England in the 1800s, deciding the meanings of wrongful death there. What we're doing here is interpreting recent action from our legislature with the Wrongful Death Act. And that's the task before the court as I see it. And as to whether 13-212 applies, which is what comes from Justice Carmeier and Justice Garmon's questions, or whether it's 202, I would offer as my proxies, again, Durham and Young. I don't have time to repeat the entire analysis, but they addressed that question. Last point, if I may. Mr. Grand said that death, I forget her exact words, and I don't mean to misquote her, but she basically said that death is such an obvious fact, that death alone puts you at knowledge of, it gives you knowledge that you better start looking at something. And a moment's reflection, I think, says that that can't quite be true, but I don't have to rely upon a moment's reflections. I rely upon this court's opinion in Wyness in 1989. And this court said, addressing this very issue, that it is in all probability it has been with the universality of death. So with that moment of reflection, we can recognize everybody dies. There's always death. And is death alone sufficient to put you on notice that there might be wrongful causation? Of course not. So Wyness says that with the universality of death in mind, the courts have applied the discovery rule to cases where a death had occurred sometime prior to the discovery of its wrongfully caused nature. The delay of the running of the limitation period accepted by the appellate courts in some districts, and we're talking exactly about the cases that are here today, fewer and its line, assures that a wrongful death action may be filed after death when plaintiffs finally know or reasonably should know of the wrongfully caused injury which led to death. And the last sentence, if you would indulge me, is that many wrongful death cases have emphasized this discovery time. And so that language from Wyness is strong dictum from this court, pointing to the fact, I mean, it's saying that the fewer line of cases is correct. And I ask that that be the rule that you adopt here today. And if anybody here have questions, thank you very much. Thank you. Case number 119572, Randall W. Moon, et cetera, Appellant v. Chloris F. Road, et cetera, et al., will be taken under advisement as agenda number eight. Mr. Reagan and Mr. Grand, we thank you.